IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CR. NO. 2:11cr10-MHT |
| | ) | (WO) |
| CARL HAWKINS, JR. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. Introduction**

The defendant, Carl Hawkins, Jr., ("Hawkins") was charged on January 13, 2011, with possession with intent to distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1). On April 15, 2011, Hawkins filed a motion to suppress, in which he asserts the following claims:

(1) Hawkins was arrested as the passenger in a truck belonging to co-defendant Harry Pruitt ("Pruitt"). Pruitt was stopped by Deputy Sheriff in order to inspect the truck. Said truck did not have a trailer attached.

(2) Harry Pruitt, the co-defendant was unlawfully detained in the front seat of a law enforcement officer's patrol car and the continued questioning of Pruitt after the initial purpose of the stop was completed violated the Fourth Amendment.

(3) The search that resulted was also a violation of the Fourth Amendment in that there was no reasonable suspicion of any criminal activity at the time of the stop.

(4) Pruitt was not free to leave at conclusion of inspection because his driver's license was still held by Deputy Sheriff, and Sheriff continued questioning Pruitt. Pruitt continued answering questions in Deputy's vehicle without objection even though he had been given copy of inspection report.

(5) Under *Florida v. Royer*, 460 U.S. 491 (1983), where a reasonable person is not free to leave because authorities are holding his or her property, person

is in a confined space, and no probable cause exists to keep person there, this person is in custody and under arrest and any further questioning without probably cause is a violation of the defendant's Fourth Amendment right to be free of warrantless arrest without any indicia of probable cause.

(6) Under *United States v. Drayton*, 536 U.S. 194 (2002), where a co-defendant was not free to decline to answer the Deputy's questions due to his being detained, any answers or consented search that resulted from his detention was illegal and in violation of the Fourth Amendment.

(Doc. No. 34, pp. 1-2.)

Hawkins requests that all fruits of the allegedly illegal search, including the five kilograms of cocaine hydrochloride, be suppressed. The court held an evidentiary hearing on the motion on May 4, 2011. During the suppression hearing, Hawkins also argued that a law enforcement officer did not have reasonable suspicion to prolong the roadside detention. Based on the evidence presented to the court and argument of the parties, the court concludes that the motion to suppress is due to be denied.

## II. Facts

On January 11, 2011, while parked along a median near mile marker 148 on Interstate 65 North, Lowndes County Deputy Sheriff Henry A. Cox ("Deputy Cox") observed a bobtail tractor without a license plate displayed where the officer could see it. (Tr. I-6) Deputy Cox proceeded to follow the truck in his patrol car. He activated his patrol car's lights and initiated a traffic stop.

Deputy Cox approached the passenger side of the vehicle and asked the driver, Harry Pruitt ("Pruitt"), for his identification and log book. He also asked whether the passenger, Hawkins, worked for the trucking company. Pruitt explained that Hawkins was in a car

accident the previous evening in an area near Moss Point, Mississippi and that he was giving him a ride to Columbus, Georgia. Deputy Cox commented that driving from Moss Point to Columbus in a bobtail tractor to give someone a ride with the price of gas at the time did not make sense to him.[1] While looking through Pruitt's log book, Deputy Cox noticed that the last entry was at 6:30 a.m. the previous morning in Houston, Texas and that two other entries from the previous week were blank. The deputy also noticed that a Texas license plate was displayed along the front windshield of the bobtail tractor. Deputy Cox told Pruitt that he needed to conduct a level two inspection on the vehicle.

During the inspection, Pruitt sat in the front seat of Deputy Cox's patrol car. After conducting inspection of the vehicle, Deputy Cox returned to the patrol car and contacted the national operation center concerning the status of the truck's registration. While waiting for a report from the center, Pruitt began a conversation with Officer Cox about a motorcycle wreck he had suffered. Upon being notified by the center that Pruitt's identification and tag number were accurate, Deputy Cox told Pruitt that "everything's good" and that he would not write him a ticket for failing to display his license tag properly. Deputy Cox also handed Pruitt his identification and inspection documentation and advised that he should affix his signature and phone number on the paperwork and mail or fax the information to the address provided.

Pruitt remained in the patrol car and continued talking to Deputy Cox about his

---

[1] During the suppression hearing, Deputy Cox testified that the price of fuel was $3.37 per gallon. This court's review of the videotape of the stop also indicates that Pruitt told Officer Cox that the price of gasoline around that time was between $3.20 and $3.30 per gallon.

3

motorcycle accident, as well as an occasion where someone shot a gun at him. During this conversation, Deputy Cox asked Pruitt if he had anything in his truck, such as weapons or marijuana. Pruitt told Deputy Cox that a gun was in a case under the bunk in the truck. Deputy Cox asked Pruitt if he could search his truck and he said that he could.

Deputy Cox called a request over his radio that another officer assist him with a search. While waiting on the other officer, Pruitt told Deputy Cox that he did not have a permit for the gun. Deputy Cox cautioned Pruitt that he could take him to jail without a pistol permit. Pruitt signed a consent-to-search form and told the officer where the gun could be found. Pruitt also told the deputy that he had a duffel bag filled with clothes and paperwork and acknowledged that everything in the truck belonged to him.

Shortly thereafter, another officer arrived on the scene. Pruitt remained in Deputy Cox's patrol car. The officer approached the truck, and Hawkins stepped out of the vehicle. After Hawkins was patted down for weapons and placed in the front seat of the other officer's patrol car, Deputy Cox began searching the interior of the truck. Upon raising the bunk in the sleeper compartment, Deputy Cox found a silver case containing a handgun and two loaded magazines, as well as two duffel bags. Deputy Cox unzipped the bags, finding dirty laundry in one bag and five small packages of a substance which appeared to be cocaine in the other bag. After the substance field-tested positive, Pruitt and Hawkins were placed under arrest. Upon being advised of his rights, Pruitt acknowledged that he had a bag, clothes, and a gun in the vehicle; however, he denied any knowledge of the contraband found in the truck.

### III. Discussion

#### A. Claims on behalf of the Co-Defendant

Claims Two, Four, Five and Six concern the continued questioning of Pruitt and the voluntariness of his consent. The general rule is that Fourth Amendment rights are personal and may not be vicariously asserted. *United States v. Leon*, 468 U.S. 897, 965 (1984) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)); *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978); *United States v. McKennon*, 814 F.2d 1539, 1545 (11th Cir. 1987). Thus, Hawkins cannot vicariously assert that Pruitt's Fourth Amendment rights were violated. Consequently, the motion to suppress on this basis should be denied.

#### B. The Stop

To the extent Hawkins argues that the initial stop of the vehicle was not based on probable case because no traffic violation occurred, the motion to suppress the evidence is due to be denied.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). A police officer "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)). In this case, Deputy Cox stopped the commercial vehicle only after having probable

cause to believe that the driver had committed a traffic violation, specifically that the bobtail tractor was missing a license plate or tag. (Tr. I-6 & 7) Officer Cox believed this to be a violation of federal guidelines. (Tr. I-7) The court concludes that a reasonable officer in Officer Cox's position could have stopped the co-defendant's vehicle for failure to display a license plate or tag, and therefore, the stop was constitutionally permissible. This is true even if Officer Cox was wrong about federal guidelines. *See United States v. Corley*, No. 09-15587, 2011 WL 43540, *1 (11th Cir. Jan. 6, 2011) (Deputies' incorrect but reasonable belief of a possible tag violation established probable cause for the stop). *See also United States v. Zalvidar*, 292 Fed. Appx. 868 (11th Cir. 2008) (officer had reasonable suspicion of criminal activity necessary to conduct stop of defendant's truck, where trailer tag of vehicle was not visible due to improper functioning of tag light in violation of traffic law).

### C. Reasonable Suspicion to Prolong the Roadside Detention

The defendant asserts that Deputy Cox, without articulable suspicion of wrongdoing, extended the detention beyond that was necessary to handle the violation. A traffic stop must be of limited duration and may not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001). The duration of the traffic stop "must be limited to the time necessary to effectuate the purpose of the stop." *Id.* However, where the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir.1991). A seizure that is justified solely by the interest in issuing a warning ticket to the

driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). However, a law enforcement officer is "entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir.1999). In addition, the stop "may be prolonged where an officer is able to articulate a reasonable suspicion of other illegal activity beyond the traffic offense." *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir.2003). "[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. . . . " *Illinois v. Wardlow*, 528 U.S. 119 (2000). "When making a determination of reasonable suspicion, [the court] must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Perkins*, 348 F.3d at 970 (internal quotation omitted).

The court concludes that the Deputy Cox had developed reasonable suspicion for continuing the stop. Those reasons include (1) Pruitt's explanation that he was gratuitously giving Hawkins a ride from Moss Point, Mississippi to Columbus, Georgia in a large commercial vehicle when the cost of gasoline was at or around $3.37 a gallon; (2) the log book's last entry indicating the truck was in Houston, Texas around 6:30 a.m. the previous day; and (3) two days of missing log book entries within the past seven days. These indicators fully establish the necessary articulable and reasonable suspicion necessary to

support the officers' continued detention of Hawkins and the vehicle. Moreover, only twenty-eight minutes passed between the time of the initial stop and Pruitt's consent to search the truck. The court is hard-pressed to find that twenty-eight minutes is unreasonably long for a traffic stop in light of this Circuit's prior decision concluding that fifty minutes is not an unreasonable length of time to conduct a traffic stop. *See United States v. Hardy,* 855 F.2d 753, 761 (11th Cir. 1988). *See also United States v. Geboyan,* 367 Fed. Appx. 99, 100 (11th Cir. 2010) (20 minutes); *United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir. 2001) (14 minutes); *United States v. $175,722.77 in United States Currency, more or less*, 2007 WL 1339853 *2 (11th Cir. May 8, 2007) (7 minutes). Accordingly, the court concludes that a traffic stop conducted twenty-eight minutes was not unreasonable and that Deputy Cox's actions did not unreasonably extend the traffic stop.

Furthermore, Hawkins cannot contest the continuance of the detention after Deputy Cox ended the inspection and handed Pruitt his identification and log book. The court finds that, after Deputy Cox returned the log book and paperwork concerning the Level 2 inspection to Pruitt, Pruitt's voluntary continuation of the conversation rendered any further detention consensual. *See United States v. Ramirez*, 476 F.3d 1231 (11th Cir. 2007). Hawkins, therefore, cannot contest the detention of Pruitt and his vehicle after the inspection ended, but the conversation continued. Based on the foregoing, the court concludes that the motion to suppress is due to be denied.

### IV. Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the

defendant's motion to suppress be denied.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **June 10, 2011.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 27th day of May, 2011.

                                      /s/Charles S. Coody
                                      CHARLES S. COODY
                                      UNITED STATES MAGISTRATE JUDGE